UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARON TOLSON,

    Plaintiff,

    v.

THE HARTFORD FINANCIAL
SERVICES GROUP, INC. et al.,

    Defendants.

Civil Action No. 16-440 (JDB)

## MEMORANDUM OPINION

In 2014, plaintiff Sharon Tolson filed an action in D.C. Superior Court against Massage Escape Spa, Inc. ("Massage Escape"), alleging that a Massage Escape employee sexually assaulted her during a massage. Massage Escape's business liability insurance carriers, The Hartford Financial Services Group, Inc. ("Hartford") and Sentinel Insurance Company, Ltd. ("Sentinel"), refused to defend or indemnify Massage Escape on Tolson's claims, and the Superior Court entered a $1,000,000 consent judgment against Massage Escape. Instead of agreeing to pay Tolson directly, Massage Escape assigned to Tolson its rights—if any—against Hartford and Sentinel (collectively, "defendants"). Tolson brought this action in Superior Court against defendants, asserting several claims arising out of their denial of coverage to Massage Escape. After removing the action to this Court, defendants moved to dismiss Tolson's complaint on grounds that, inter alia, her claims against Massage Escape fell within a policy exclusion that disclaims coverage for "any injury or damage . . . arising out of . . . 'sexual abuse.'"

Tolson's complaint alleges a grievous wrong. But unfortunately, as the Court will explain below, the settlement that she accepted in Superior Court leaves her with few avenues to seek redress. For the reasons that follow, the Court will grant defendants' motion to dismiss.

# **BACKGROUND**[1]

In July 2014, a friend gave Tolson a "Groupon"[2] that entitled her to a free 60-minute massage at Massage Escape. Pl.'s Compl. [ECF No. 1-1] ¶ 10. When Tolson went to Massage Escape to redeem her Groupon a few months later, she was introduced to "Tommy," a male employee whose real name (according to Tolson) was Zhenkai Tong. Id. ¶ 12. Tolson followed Tong into a small room, where she undressed, placed a sheet over her body, and laid face down on a massage table. Id. ¶ 14. Tong then proceeded to massage Tolson. Id. During the massage, Tolson alleges, Tong "rub[ed] his erect penis against [her] head," "insert[ed] his fingers into [her] vagina and anus," and "perform[ed] oral sex on her" while "forcefully holding [her] down"—all without her consent. Id. ¶ 15. Tolson was eventually able to escape Tong, dress quickly, and flee the premises. Id.

After leaving Massage Escape, Tolson immediately flagged down a police officer and reported what had happened. Id. ¶ 16. According to Tolson's complaint, Tong was arrested that day and charged with "the felony of First Degree Sexual Abuse of a Patient/Client." Id. Nonetheless, Tolson alleges, Tong remained an employee at Massage Escape until a few days later, when "he was able to flee the country to China." Id. Tolson later discovered that she was not the first woman to be assaulted during a massage at Massage Escape: in an online review dated January 21, 2014, another female customer had written that during her massage, "my male masseur pressed himself against me—I could feel his penis through his pants." Id. ¶ 17. Tolson also alleges that Tong was not licensed to practice massage therapy in the District of Columbia. Id. ¶ 12.

---

[1] The following factual summary is taken from the allegations in Tolson's complaint, which the Court assumes to be true for purposes of ruling on this motion to dismiss.

[2] As Tolson explained in her complaint in the underlying action, a "Groupon" is a promotional coupon sold by Groupon, Inc. that entitles the holder to a good or service provided by a local business. See Ex. A to Defs.' Mot. to Dismiss [ECF No. 7-1] ¶ 11. Groupons are ordinarily sold at discounted prices so as to attract new customers to such businesses.

Tolson filed a complaint in the Superior Court for the District of Columbia against several defendants, including Massage Escape. Id. ¶ 19. Her complaint asserted five claims against Massage Escape: (1) negligent hiring, training, and supervision; (2) negligence per se; (3) unlawful trade practices in violation of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 3901–13; (4) assault and battery; and (5) intentional infliction of emotional distress. Ex. A to Defs.' Mot. to Dismiss [7-1] ¶¶ 24–36, 42–47, 54–63. At some point thereafter, Massage Escape asked Hartford and Sentinel, its business liability insurance carriers,[3] to defend it against Tolson's claims. In a letter dated November 20, 2014, Hartford and Sentinel disclaimed any duty to defend or indemnify Massage Escape under the policy because, inter alia, Tolson's claims fell within an exclusion in the policy for "injury or damage . . . arising out of . . . 'sexual abuse.'" Ex. 2 to Pl.'s Compl. [ECF No. 1-1] at 6.

In August 2015, the Superior Court entered a consent judgment against Massage Escape in the amount of $1,000,000. See Ex. 1 to Pl.'s Compl. [ECF No. 1-1]. The judgment provided that:

> Massage Escape . . . shall grant, assign[,] and transfer to [Tolson] . . . all rights, claims[,] and causes of action, including but not limited to those for failure to defend, indemnification, breach of contract, bad faith, wrongful failure to settle within the limits of liability[,] and the award of attorneys [sic] and costs, which . . . Massage Escape . . . has or may have against [] Hartford . . . arising under and out of the Business Owner[']s insurance policy . . . issued by [] Hartford . . . to Massage Escape . . . []or as a result of a wrongful denial by [] Hartford of liability insurance coverage and defense to Massage Escape . . . for claims and causes of action[] asserted by [Tolson] . . . []or as a result of []

---

[3] The relationship between Hartford and Sentinel with respect to Massage Escape's policy is unclear from the parties' briefing. Tolson's complaint alleges that Sentinel "participated in a joint venture with Hartford for purposes of providing insurance services to Massage Escape." Pl.'s Compl. ¶ 8. In their motion to dismiss, by contrast, defendants state that "Sentinel was the insurer that issued the policy. [Hartford], which is not an insurer, did not issue the policy and is not a proper party to Ms. Tolson's claims." Defs.' Mot. at 1 n.1; but see Ex. 2. to Pl.'s Compl. (showing the November 2014 denial-of-coverage letter—the authenticity of which defendants do not dispute—which was prepared on Hartford's letterhead but signed by a representative of Sentinel and which refers to the two entities interchangeably). For purposes of this motion to dismiss, the Court will assume the truth of Tolson's allegation that defendants were coinsurers on Massage Escape's policy. The parties do not dispute that the policy was in effect at the time of Tong's assault on Tolson in late 2014. See Pl.'s Compl. ¶ 22; Defs.' Mot. to Dismiss at 4.

3

> Hartford's wrongful failure to settle those claims and cause[s] of action[] within the limits of liability of the Policy.[4]

Id. at 1–2. The judgment explicitly provided that "this Consent Judgment shall not be enforced against [] Massage Escape." Id. at 2.

Consent judgment in hand, Tolson filed this action in Superior Court against defendants Hartford and Sentinel. Tolson's complaint asserts five claims arising out of defendants' failure to indemnify Massage Escape on the consent judgment, as well as their alleged failure to properly "investigate," "evaluat[e]," "negotiate," and "defend" Tolson's claims in the underlying action. These claims are: (1) breach of contract, see Pl.'s Compl. ¶ 29–37; (2) breach of the implied covenant of good faith and fair dealing, see id. ¶¶ 38–43; (3) breach of fiduciary duty, see id. ¶¶ 44–50; (4) negligence, see id. ¶ 51–55; and (5) unlawful trade practices in violation of the D.C. Consumer Protection Procedures Act, see id. ¶¶ 56–65. Defendants removed to this Court on the basis of the parties' diverse citizenship, see Notice of Removal [ECF No. 1] at 1–2, and filed this motion to dismiss Tolson's complaint under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary, to provide the "grounds" of

---

[4] In fact, Massage Escape had already executed an assignment to Tolson of its rights against Hartford. See Exh. 3 to Pl.'s Compl. [ECF No. 1-1]. As defendants note, neither the consent judgment nor the assignment executed earlier by Massage Escape purports to assign to Tolson any rights that Massage Escape may have had against Sentinel. See Defs.' Mot. to Dismiss at 6 n. 7. But because the precise relationship between Hartford and Sentinel in this case is unclear, see supra note 3, the Court will assume without deciding that the assignment is valid and operates against both defendants. See Defs.' Mot. to Dismiss at 2 n.3 ("reserv[ing] [defendants'] rights with respect to [inter alia] whether Ms. Tolson's assignment is effective.").

4

"entitle[ment] to relief" plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555–56 (citation and internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

## ANALYSIS

### I. TOLSON'S CONTRACT CLAIMS AGAINST HARTFORD AND SENTINEL

Because an insurance policy is a contract, it is governed by principles of contract law. See Stevens v. United Gen. Title Ins. Co., 801 A.2d 61, 66 (D.C. 2002). As the assignee of Massage Escape's rights (if any) against defendants, Tolson "stands in the shoes" of Massage Escape and may assert any claims that Massage Escape could have asserted against defendants. Flack v. Laster, 417 A.2d 393, 400 (D.C. 1980) (citations and internal quotation marks omitted). Neither party disputes that the law of the District of Columbia governs in this diversity action. See Adolph Coors Co. v. Truck Ins. Exch., 960 A.2d 617, 620–21 (D.C. 2008) (setting out the "governmental interest test" that D.C. courts use to determine which state's law governs the interpretation of an insurance contract).

#### A. Breach of Contract

Tolson's primary claim in this action is that defendants breached their insurance contract with Massage Escape by failing both to defend it in the underlying action and to indemnify it on the $1,000,000 consent judgment.[5] The motion to dismiss will be granted as to this claim.

---

[5] Tolson also asserts that defendants breached the insurance contract by failing to "investigate the facts and applicable law," "evaluat[e] the claim," and "negotiate" with Tolson. Because the policy does not impose an express duty on defendants to investigate, evaluate, or settle claims, see Ex. B to Defs.' Mot. to Dismiss [7-2] at 1 (providing

5

Under District law, an insurer's duty to defend an insured is "conceptually distinct" from its duty to indemnify the insured on any judgment that may be entered against it. Salus Corp. v. Cont'l Cas. Co., 478 A.2d 1067, 1069 (D.C. 1984). "To determine whether an insurance company has the duty to defend an insured," courts in the District apply the so-called "eight corners rule," which calls for an examination of "both the underlying complaint and the insurance policy." Carlyle Inv. Mgt., LLC v. Ace Am. Ins. Co., 131 A.3d 886, 896 (D.C. 2016). "If the allegations of the complaint state a cause of action within the coverage of the policy[,] the insurance company must defend." Id. (citation omitted). Moreover, because "[t]he duty to defend is broader than the duty to indemnify," "[i]f there is no duty to defend, there is no duty to indemnify." Id. (citations omitted). Where an insurer disclaims coverage on the basis of a policy exclusion, "the burden is on the insurer to prove the facts which bring the case within the specified exception." Id. (citation omitted). At the motion-to-dismiss stage, this means that "it must be clear, without sweeping generalizations, that all claims in the underlying complaint[] fall squarely within the [claimed] exclusion." Id. at 897.

Here, Massage Escape's business liability insurance policy provides that defendants "will pay those sums that [Massage Escape] becomes legally obligated to pay as damages because of 'bodily injury[,]' 'property damage' or 'personal and advertising injury' to which this insurance applies." Ex. B to Defs.' Mot. to Dismiss [ECF No. 7-2] at 21. Defendants also "have the right and duty to defend [Massage Escape] against any 'suit' seeking those damages." Id.[6]

---

that defendants "may, at our discretion, investigate any 'occurrence' or offense and settle any claim or 'suit' that may result" (emphasis added)), the Court will construe these allegations as allegations of bad-faith performance of defendants' contractual obligations, and discuss them infra in connection with Tolson's claim for breach of the implied contractual duty of good faith and fair dealing.

[6] The policy defines the phrases in quotation marks as follows: "'Bodily injury' means physical **a.** Injury; **b.** Sickness; or **c.** Disease sustained by a person and, if arising out of the above, mental anguish or death at any time." Id. at 40–41. "'Personal and advertising injury' means injury, including consequential 'bodily injury,' arising out of [inter alia] . . . **h.** Discrimination or humiliation that results in injury to the feelings or reputation of a natural person."

6

But the policy also contains several exclusions, including one entitled "EXCLUSION – SEXUAL ABUSE OR MOLESTATION" (the "sexual-abuse exclusion"). Under this exclusion, the policy

> does not apply to any injury or damage, loss, cost or expense, including but not limited to "bodily injury[,]" "property damage" or "personal and advertising injury" arising out of, or relating to, in whole or in part:
>
> **1.** Actual, threatened or attempted "sexual abuse[.]" "Sexual abuse" means lewd, lascivious or sexual conduct, including but not limited to: **a.** Sexual intercourse, including but not limited to any kind of sexual penetration, of any bodily orifice or part; **b.** Sexual molestation; **c.** Sexually explicit, sexually oriented, or sexually suggestive language, images, acts or statements; **d.** Inappropriate touching, including but not limited to any, kissing or fondling of any bodily part, including but not limited to genitalia; **e.** Sexual exhibitionism; **f.** Voyeurism; or **g.** Photographic, audio, video or digital recording or the showing of any of the foregoing by any person(s), whether injury is intended or not.
>
> **2.** Any: **a.** Employment of; **b.** Investigation of or failure to investigate; **c.** Supervision of or failure to supervise; **d.** Reporting to the proper authorities of, or failure to so report; **e.** Retention of; or **f.** Failure to protect others from the conduct of any person(s) whose conduct would be excluded by Paragraph **1.** above.

Id. at 49. Defendants argue that the sexual-abuse exclusion bars coverage on all of Tolson's claims against Massage Escape in the underlying action. See, e.g., Defs.' Reply [ECF No. 9] at 6–12.

As an initial matter, Tolson argues that the sexual-abuse exclusion is ambiguous and that, as a result, her complaint raises a factual issue that precludes disposing of this case on a motion to dismiss. Pl.'s Opp'n [ECF No. 8-1] at 6–7 (citing Carlyle, 131 A.3d at 895 ("If the provisions of the contract are ambiguous, the correct interpretation becomes a question for a factfinder." (alterations and internal quotation marks omitted))). But the sexual-abuse exclusion here could

---

Id. at 42–43. "'Property damage' means **a.** [p]hysical injury to tangible property . . . ; or **b.** [l]oss of use of tangible property that is not physically injured." Id. "'Suit' means a civil proceeding in which damages because of 'bodily injury' . . . or 'personal and advertising injury' to which this insurance applies are alleged." Id.

7

not be clearer: by its plain terms, it bars coverage for any injury "arising out of, or relating to, in whole or in part . . . [a]ctual, threatened or attempted 'sexual abuse[.]'" It then defines "sexual abuse" as "lewd, lascivious or sexual conduct," lists seven different examples, and clarifies various scenarios in which "sexual abuse" committed by a third party also falls within the exclusion.

Tolson maintains that the exclusion is ambiguous because it has "two parts with a total of thirteen [] subparts." Pl.'s Opp'n at 7–8. As explained above, however, these parts and subparts help to clarify, rather than to obscure, the exclusion's meaning. Tolson also argues that "the mere fact that [defendants] believe that Ms. Tolson's CPPA claims, which are based on the fact that Massage Escape hired an unlicensed masseur, could be excluded under the 'sexual abuse' exclusion demonstrates the ambiguity of the exclusion." Id. at 8. But the D.C. Court of Appeals has explicitly stated that "otherwise clear language in an insurance agreement is not to be deemed ambiguous 'merely because the parties do not agree' on its meaning." Chase v. State Farm Fire and Cas. Co., 780 A.2d 1123, 1127 (D.C. 2001) (citation omitted). Tolson's argument that the sexual-abuse exclusion is ambiguous and therefore presents a question of fact for a jury is without merit.

Apart from asserting that the sexual-abuse exclusion is ambiguous, Tolson also claims that defendants improperly refused to defend and indemnify Massage Escape in the underlying action because "all claims in the underlying complaint[] [do not] fall squarely within the [sexual-abuse] exclusion." Carlyle, 131 A.3d at 896; see Pl.'s Opp'n at 8. Tolson does not meaningfully dispute that Tong's acts during the 2014 massage constituted "sexual abuse" or that her assault-and-battery claim alleged an "injury . . . arising out of" that sexual abuse and hence fell under the sexual-abuse exclusion. See id. at 8–13. But she argues that her remaining claims against Massage Escape—negligence, negligence per se, intentional infliction of emotional distress, and unlawful trade

8

practices in violation of the CPPA—alleged injuries that did not "aris[e] out of" the 2014 sexual assault. The Court will consider each of these remaining claims in turn.

i. Negligence (Including Negligence Per Se)

Tolson does not dispute that her claims for negligent "supervision" and "hiring," see Ex. A to Defs.' Mot. to Dismiss ¶ 25, are barred by the sexual-abuse exclusion, which expressly disclaims coverage for injuries arising out of the insured's "[e]mployment of" or "failure to supervise . . . any person[] whose conduct" would fall within the policy's definition of "sexual abuse." See Pl.'s Opp'n at 11 (quoting Ex. B to Defs.' Mot. to Dismiss). But she urges that her claim for negligent training is not covered by the sexual-abuse exclusion, because the exclusion does not mention training, and because "exclusions from coverage are to be strictly construed." Id. (quoting Carlyle, 131 A.3d at 896).

In the District of Columbia, "a claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." Poola v. Howard Univ., 147 A.3d 267, 289 (D.C. 2016) (alteration and citation omitted). Here, Tolson's claims for negligent supervision, hiring, and training alleged different breaches of duties that Massage Escape allegedly owed to Tolson. See, e.g., Ex. A to Defs.' Mot. to Dismiss ¶ 25 (alleging that "Massage Escape . . . breached [its] duty to exercise reasonable care by," inter alia, " [f]ailing to conduct background checks on employees," "[f]ailing to ensure that all employees . . . were licensed," "[f]ailing to . . . train employees," and "[f]ailing to supervise Zhenkai Tong"). But as defendants point out, each alleged breach resulted in the same injury: Tong's alleged sexual assault of Tolson during the 2014 massage. And because Tolson does not dispute that this assault was "sexual abuse" within the meaning of the policy, all of Tolson's negligence claims seek to recover for an "injury . . . arising out of . . . 'sexual abuse'"

9

and therefore fall within the policy's sexual-abuse exclusion. See Am. Registry of Pathology v. Ohio Cas. Ins. Co., 461 F. Supp. 2d 61, 70 (D.D.C. 2006) (noting that "it is the origin of the damages, rather than the legal theories alleged[,] that inform the analysis under the eight-corners rule") (alteration and internal quotation marks omitted).

The same is true of Tolson's negligence-per-se claim. As defendants correctly point out, "negligence per se is not in and of itself a separate legal claim—rather, it permits a plaintiff under certain circumstances and under specified conditions to rely on a statute or regulation as proof of the applicable standard of care." Hunter ex rel. A.H. v. District of Columbia, 64 F. Supp. 3d 158, 188–89 (D.D.C. 2014) (internal quotation marks omitted). In the underlying action, Tolson alleged that Massage Escape violated various D.C. statutes and regulations pertaining to the provision of massage therapy services. See Ex. A to Defs.' Mot. to Dismiss ¶ 32 (alleging violations of, inter alia, D.C. Code § 3-1205.01(a)(1), which provides that "[a] license issued pursuant to this chapter is required to practice . . . massage therapy"). But even if these alleged statutory and regulatory violations were sufficient to establish that Massage Escape breached a duty owed to Tolson, she would still have to prove that she was <u>injured</u> as a result of that breach. And because the only injury alleged in her complaint was the 2014 sexual assault, Tolson's negligence-per-se theory—like her other theories of negligence—necessarily relies on an "injury . . . arising out of . . . 'sexual abuse.'" Thus, it too falls within the policy's sexual-abuse exclusion.

    ii. <u>Intentional Infliction of Emotional Distress</u>

Tolson's claim for intentional infliction of emotional distress ("IIED") fares no better. The tort of IIED has three elements: "(1) extreme and outrageous conduct . . . that (2) intentionally or recklessly (3) caused [the plaintiff] severe emotional distress." Newmyer v. Sidwell Friends Sch., 128 A.3d 1023, 1037 (D.C. 2015). Here, the injury Tolson alleges is not the 2014 sexual assault

itself, but rather the emotional distress that Tolson allegedly suffered as a result of that assault. Ex. A to Defs.' Mot. to Dismiss ¶ 62 (alleging that "[a]s a direct and proximate result of [Massage Escape's] and/or [Massage Escape's] employees['] . . . reckless and willful disregard of [Tolson's] rights and safety, [she] experienced, and will continue to experience . . . severe emotional distress," including "humiliation" and "embarrassment"). But Tolson does not meaningfully dispute that this emotional distress "ar[ose] out of . . . 'sexual abuse.'" See Pl.'s Opp'n at 11–12. Thus, her IIED claim falls within the sexual-abuse exclusion.[7]

### iii. The D.C. Consumer Protection Procedures Act

Finally, Tolson alleges that her CPPA claims were not covered by the policy's sexual-abuse exclusion. See Pl.'s Opp'n 9–10. The CPPA provides, in relevant part, that "[i]t shall be a violation of this chapter . . . for any person to":

> (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> (b) represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have; . . . [or]
>
> (f) fail to state a material fact if such failure tends to mislead.

D.C. Code § 28–3904 (entitled "unlawful trade practices"). These provisions apply "whether or not any consumer is in fact misled, deceived or damaged" by the unlawful trade practice alleged.

---

[7] In an attempt to escape this conclusion, Tolson cites American Continental Insurance Co. v. Pooya, 666 A.2d 1193 (D.C. 1995), a case in which the D.C. Court of Appeals held that an exclusion for "any claim arising out of any fraudulent, criminal or malicious acts" did not apply to an IIED claim. See id. at 1199. This was so, the court explained, because under District law, the tort of IIED can be committed *recklessly*, and because the exclusion by its terms applied only to intentional conduct. Id. But unlike the exclusion at issue in Pooya, the sexual-abuse exclusion here unambiguously defines "sexual abuse" as "lewd, lascivious[,] or sexual conduct . . . whether injury is intended or not." Ex. B to Defs.' Mot. to Dismiss at 49 (emphasis added). Hence, Pooya is inapposite here, where the exclusion applies to any sexual conduct regardless of the perpetrator's mental state.

11

Id. The CPPA also authorizes any "consumer"[8] to "bring an action seeking relief from the use of a trade practice in violation of a law of the District." Id. § 28–3905(k)(1)(A). The consumer may recover, inter alia, "[t]reble damages, or $1,500 per violation, whichever is greater," "[r]easonable attorney's fees," and "[p]unitive damages." Id. § 28–3905(k)(2).

In the underlying lawsuit, Tolson alleged that Massage Escape had committed the following unlawful trade practices: (1) "misrepresenting that [] Massage Escape . . . was certified by the Board of Health as fully licensed to provide massage therapy services" in violation of subsection (a) of section 28–3904, Ex. A to Defs.' Mot. to Dismiss ¶ 43; (2) "misrepresenting that Zhenkai Tong was certified as a licensed massage therapist in the District of Columbia" in violation of subsection (b), id. ¶ 44; and (3) "failing to disclose the material fact to Ms. Tolson that prior customers complained of being assaulted by a massage therapist . . . employed by Massage Escape" in violation of subsection (f), id. ¶ 45.[9] Tolson argues that these claims did not allege "injury . . . arising out of . . . 'sexual abuse,'" because they were based not on the sexual assault itself, but rather "on the fact that Massage Escape hired an unlicensed masseur." Pl.'s Opp'n at 9–10. Tolson also alleges that she suffered injuries "separate and apart from the sexual assault, including without limitation, statutory damages of $1,500[] per unlawful trade practice . . . , attorney's fees . . . , economic losses associated with the cost of the massage itself, and emotional distress damages relating to the CPPA claims." Id. at 9 n.3.

These arguments fail for at least two reasons. For one thing, as defendants point out, the D.C. Court of Appeals recently held that the CPPA does not dispense with the District's

---

[8] In relevant part, the statute defines a "consumer" as "a person who, other than for purposes of resale, does or would purchase . . . consumer goods or services." D.C. Code § 28-3901(a)(2)(A). When used as an adjective, "consumer" means, in relevant part, "anything, without exception, that [a] person does or would purchase . . . and normally use for personal, household, or family purposes." Id. § (a)(2)(B).

[9] Tolson also pleaded the various violations of D.C. statutes and regulations alleged in connection with her negligence per se claim, see id. ¶ 33, as independent violations of the CPPA, see id. ¶ 43.

12

"longstanding injury-in-fact requirement," which D.C. courts "typically follow . . . for prudential reasons." Rotunda v. Marriott Intern., Inc., 123 A.3d 980, 988 (D.C. 2015) (explaining that the standing requirement, though not jurisdictional because D.C. courts are not organized under Article III, is nonetheless grounded in the "recognition that an adversary system can best adjudicate real, not abstract, conflicts"). Thus, a plaintiff must allege that she suffered "some threatened or actual injury resulting from . . . putatively illegal action" to maintain a CPPA claim in a D.C. court. Id.; see also Stone v. Landis Const. Co., 120 A.3d 1287, 1289 (D.C. 2015). This injury-in-fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Grayson v. AT&T Corp., 15 A.3d 219, 246 (D.C. 2011) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)); see also Spokeo v. Robins, 136 S. Ct. 1540, 1548 (2016) (explaining that the term "concrete" means "'real,' and not 'abstract.'").

Here, of course, Tolson did allege an injury-in-fact in her underlying complaint: the 2014 sexual assault. But as the Court has already explained, Tolson does not dispute that this alleged injury falls squarely within the policy's sexual-abuse exclusion. Moreover, with one possible exception, none of the other injuries asserted by Tolson would have given her standing to bring her CPPA claims.[10] This suggests that her claims "ar[ose] out of" the sexual assault, at least in the sense that the assault was likely the injury-in-fact that gave her standing to assert them.

---

[10] The mere fact that Massage Escape allegedly "hired an unlicensed masseur," Pl.'s Opp'n at 8, is neither sufficiently concrete (because it infringes only an abstract interest in masseurs being licensed) nor sufficiently particularized (because all District residents share that interest) to confer standing. Nor is it sufficient that Tolson might have been entitled to statutory damages under the CPPA. See Spokeo, 136 S. Ct. at 1549 (explaining that "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"). Likewise, Tolson's conclusory assertion of "emotional distress . . . relating to the CPPA claims," Pl.'s Opp'n at 9 n.3, does not explain how the alleged CPPA violations caused her distress in their own right. Thus, it too would not support a finding of standing.

The possible exception noted above is the "economic loss[] associated with the cost of the massage itself." Pl.'s Opp'n at 9 n.3. Defendants argue that Tolson's complaint does not actually allege such losses, because Tolson alleges that she received her Groupon to Massage Escape as a gift. See Defs.' Mot. to Dismiss at 8; Pl.'s Compl. ¶ 10. But Tolson did allege that the Groupon entitled her to a 60-minute massage—a thing of value that she claims she never received. Ultimately, however, the Court need not decide whether this alleged economic loss would have been

In any case, even if Tolson's CPPA claims alleged injuries that did not "aris[e] out of" the 2014 assault, those claims still would not be covered by the policy, because the alternative injuries Tolson alleges do not qualify as "bodily injury," "property damage," or "personal and advertising injury"—the only types of injuries covered by the policy in the first place. Nowhere does the policy provide coverage for statutory damages, and although the policy obligates defendants to pay for attorneys' fees "incurred <u>by us</u> [that is, defendants] in the defense of [Massage Escape]," <u>see</u> Ex. B to Defs.' Mot. to Dismiss at 23 (emphasis added), it does not provide coverage for attorneys' fees that Massage Escape becomes obligated to pay to another party by virtue of a fee-shifting statute. Nor does the policy's definition of "property damage"—which is limited to "tangible property," <u>see</u> <u>id.</u> at 43—extend to economic losses such as those associated with Tolson's loss of the value of the Groupon. Finally, although the policy's definition of "personal and advertising injury" does extend to "humiliation that results in injury to the feelings or reputation of a natural person," <u>see</u> <u>id.</u>, Tolson does not explain how Massage Escape's alleged failures to accurately represent its qualifications or those of its employees—independently of the sexual assault to which those failures allegedly led—"humiliat[ed]" her in their own right.

In short, in arguing that her CPPA claims were covered by Massage Escape's policy, Tolson finds herself between a rock and a hard place: her CPPA claims either "ar[ose] out of" the 2014 sexual assault, in which case coverage is barred by the sexual-abuse exclusion, or they "ar[ose] out of" some kind of other, freestanding injury that does not qualify as "bodily injury," "property damage," or "personal and advertising injury" and thus does not fall within the policy's <u>prima facie</u> scope of coverage. Though it seems that the former reading of her claims is the more plausible one, under either reading her claims were not covered by the policy.

---

sufficient to confer standing, because—as explained below—even if it were, it would not constitute "bodily injury," "property damage," or "personal [or] advertising injury" covered by the policy.

14

Thus, none of the claims asserted by Tolson in the underlying litigation were covered by Massage Escape's insurance policy. Defendants therefore had no duty to defend Massage Escape in the underlying action or to indemnify it on any judgment entered in that action, and Tolson's complaint fails to state a claim that defendants breached the insurance contract by disclaiming coverage.

### B. Breach of the Duty of Good Faith and Fair Dealing

"Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action." Choharis v. State Farm Fire and Cas. Co., 961 A.2d 1080, 1087 (D.C. 2008). A party to a contract breaches its duty of good faith and fair dealing if it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." Allworth v. Howard Univ., 890 A.2d 194, 201 (D.C. 2006).

Here, Tolson asserts that defendants breached their duty of good faith and fair dealing by refusing (1) to "investigate" and "evaluat[e]" Tolson's claims, (2) to "negotiate" with Tolson, (3) to defend Massage Escape in the underlying litigation, and (4) to indemnify it on the consent judgment. Pl.'s Compl. ¶¶ 39–41. But Tolson's complaint does not plausibly allege facts that suggest that defendants made any of these refusals in bad faith. For example, Tolson alleges that defendants "did not evaluate or investigate Ms. Tolson's negligence, negligence per se, and unlawful trade practices [claims] to determine if the Policy provided coverage for those claims." Id. ¶ 40. But defendants' denial letter, which expressly acknowledges these claims on its second page, shows that defendants concluded that the claims were barred by the sexual-abuse exclusion. See Ex. 2 to Pl.'s Compl. at 24 (listing all seven counts in Tolson's underlying complaint, including the counts against Massage Escape for negligence, negligence per se, and violations of the CPPA);

15

id. at 30 (concluding that the sexual-abuse exclusion "bars coverage for the alleged 'sexual abuse' by Zhenkai Tong as well as [Massage Escape's] employment of, investigation of . . . , supervision of . . . , reporting to proper authorities of . . . , retention of[,] or failure to protect others from the conduct alleged of Zhenkai Tong"). The fact that the denial-of-coverage letter did not refer to these claims by name in its discussion of the sexual-abuse exclusion does not raise a plausible inference of bad-faith conduct.

Nor does Tolson plausibly allege that defendants sought to "evade[] the spirit of the contract" or "willfully render[] imperfect performance" simply by disclaiming coverage. At best, her allegations suggest that defendants reviewed her claims against Massage Escape and determined that they were not covered by Massage Escape's insurance policy. See Iqbal, 556 U.S. at 680 (explaining that even where a complaint alleges facts that are "consistent with" unlawful conduct, it does not "plausibly suggest" that the defendant engaged in such conduct if those facts are "not only compatible with, but indeed [] more likely explained by" an alternative pattern of "lawful . . . behavior"). Tolson's allegations are therefore insufficient to state a claim for breach of the duty of good faith and fair dealing.

## II.    TOLSON'S TORT CLAIMS AGAINST HARTFORD AND SENTINEL

In addition to her contractual claims, Tolson brings multiple tort claims against defendants. In the District of Columbia, an insured may sue an insurer in tort where "the injury to the [insured is] an independent injury over and above the mere disappointment of [the insured's] hope to receive his contracted-for benefit. Put another way, the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship." Choharis, 961 A.2d at 1087 (citation omitted). The D.C. Court of Appeals has specifically declined to recognize a tort for "bad faith by insurance companies in

the handling of policy claims," including "failure to conduct good faith investigation of insured's claims." Id. at 1086–87 & n.5.

### A. Negligent Failure to Investigate and Defend

Tolson's first tort claim, for "negligent failure to investigate and defend," is essentially a reprisal of her claim for breach of the duty of good faith and fair dealing. She alleges that defendants "had a duty to investigate and fairly evaluate the claims brought by Ms. Tolson against Massage Escape," that they "breached [their] duty to Ms. Tolson by failing to evaluate and investigate [her] negligence, negligence per se, and CPPA claims," and that "as a direct and proximate result," Tolson "suffered substantial damages." Pl.'s Compl. ¶¶ 52–55.

Even assuming that Tolson's negligence claims are cognizable under D.C. law, but see Choharis, 961 A.2d at 1087 (explaining that "[d]isputes relating to the respective obligations of the parties to an insurance contract should generally be addressed within the principles of law relating to contracts" and that "bad faith conduct can be compensated within those principles"), they still fail. As the Court has already explained, Tolson's own allegations suggest that defendants did all of the investigation and evaluation that was required of them under District law.[11] And in any case, Tolson's negligence claims do not allege any injury "over and above the mere disappointment of [her] hope to receive" indemnification on her judgment against Massage Escape. Id. Thus, defendants' motion to dismiss will be granted as to Tolson's negligence claims.

---

[11] In her opposition, Tolson emphasizes that defendants' November 2014 denial-of-coverage letter "makes absolutely no mention of Ms. Tolson's negligence, negligence per se, [IIED], and CPPA claims in reference to the 'sexual abuse.'" Pl.'s Opp'n at 17. True, the letter does not mention these claims by name under the heading "Form SS 05 71 04 05," which refers to the designation assigned to the sexual-abuse exclusion in the policy. Ex. 2 to Pl.'s Compl. at 28–30. But the letter does expressly acknowledge those claims elsewhere, see id. at 24, and its general discussion of the sexual-abuse exclusion's application to Tolson's claims allays any concerns that defendants somehow overlooked or ignored her claims for negligence, negligence per se, IIED, and violations of the CPPA. See id. at 30 (concluding that the sexual-abuse exclusion "bars coverage for the alleged 'sexual abuse' by Zhenkai Tong as well as [Massage Escape's] employment of, investigation of . . . , supervision of . . . , or failure to protect others from the conduct alleged of Zhenkai Tong").

### B. Breach of Fiduciary Duty

Tolson's claim for breach of fiduciary duty is also a reprisal of her claim for the breach of duty of good faith and fair dealing. Again, she alleges that "[t]he factual basis for this claim is not just the inadequate excuse for the Hartford Group's decision to deny coverage, but its utter failure to even evaluate coverage for the negligence, negligence per se, intentional infliction of emotional distress, and CPPA claims in the Underlying Complaint." Pl.'s Opp'n at 14.

Though the D.C. Court of Appeals has acknowledged "the possibility of fiduciary principles coming into play in certain third-party situations, such as where the insurance company is involved in a settlement of a third-party claim or directs the actual course of the defense," Coharis, 961 A.2d at 1090, Tolson cites no authority establishing that here—where defendants neither were "involved in a settlement" nor "direct[ed] the actual course of the defense"—defendants breached or even owed any fiduciary duties to Massage Escape. See Pl.'s Opp'n at 14–15. And again, in any case, Tolson's fiduciary-duty claim seeks redress for "the mere disappointment of [her] hope to receive [the] contracted-for benefit" in Massage Escape's insurance contract. Choharis, 961 A.2d at 1087. Defendants' motion to dismiss will be granted as to this claim.

### III. TOLSON'S CPPA CLAIMS AGAINST HARTFORD AND SENTINEL

Finally, Tolson alleges a slew of CPPA claims against Hartford and Sentinel—claims separate and apart from her CPPA claims against Massage Escape in the underlying action. Specifically, Tolson alleges that the policy's statement that defendants "will pay those sums that [Massage Escape] becomes legally obligated to pay as damages because of 'bodily injury[,]' 'property damage,' or 'personal and advertising injury' to which this insurance applies," Ex. B. to Defs.' Mot. to Dismiss at 21, is an unlawful trade practice in violation of D.C. Code

section 28–3904(a), (d), and (e).[12] See Pl.'s Compl. ¶¶ 57–59. She also alleges that the policy "misrepresented the material fact that it 'address[ed] coverage [under the policy] as it applies to the allegations that have been made" in violation of § 28–3904(e) and (f),[13] because defendants failed to evaluate Tolson's negligence, negligence per se, and CPPA claims. Id. ¶¶ 60–62 (alterations in original). Finally, she alleges that defendants "committed four [] unlawful trade practices [in violation of the CPPA] by violating . . . the District of Columbia's Unfair Insurance Trade Practices [statute]." Id. ¶ 63 (citing D.C. Code § 31–2231.17).

Unfortunately for Tolson, these claims are also unavailing. As defendants point out in their reply brief, the CPPA only authorizes private suits for unlawful trade practices related to consumer goods. See D.C. Code § 28–3905(k)(1)(A) ("A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District." (emphasis added)); id. § 28–3901(a)(6) (defining "trade practice" as "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services") (emphasis added); see also id. § 28–3901(a)(1)(2) (defining "consumer," when used as an adjective, as "anything . . . that [] [a] person does or would purchase, lease (as lessee), or receive and normally use for personal, household, or family purposes") (emphasis added). Tolson alleges that Massage Escape's policy was a business liability insurance policy, and Tolson does not argue—nor could she—that the policy was issued to Massage Escape for "personal, household, or family purposes." Thus, the

---

[12] Subsection (a) of section 28–3904 makes it an unlawful trade practice to "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have." Subsection (d) makes it an unlawful trade practice to "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another." Subsection (e) makes it an unlawful trade practice to "misrepresent as to a material fact which has a tendency to mislead."

[13] Subsection (f) of section 28–3904 makes it an unlawful trade practice to "fail to state a material fact if such failure tends to mislead."

19

CPPA is inapplicable to Massage Escape's insurance policy with defendants, and Tolson's complaint fails to state a claim for violations of the CPPA.[14]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss will be granted. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: September 29, 2017

---

[14] Defendants also argue that the CPPA does not apply to insurers at all, because the D.C. Court of Appeals has construed the CPPA to apply only to actions that arise under the administrative jurisdiction of the D.C. Department of Consumer and Regulatory Affairs, see Howard v. Riggs Nat. Bank, 432 A.2d 701, 709 (D.C. 1981), and because that agency was stripped of jurisdiction over insurance contracts in 1997. See Defs.' Reply at 14–15. But the Court need not address this argument because, as stated above, even if the CPPA did apply to insurance contracts in some cases, it would not apply to the contract at issue here.